**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Terry R. Lemley,<br><br>  Plaintiff,<br><br>v.<br><br>Graham County, et al.<br><br>  Defendants. | No. CV-11-338-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by Defendants Graham County, Mark Herrington, James Palmer and Drew John ("Defendants") on November 2, 2012.[1] (Doc. 55.) Plaintiff Terry Lemley ("Lemley") filed a response to the Motion on March 7, 2013.[2] (Doc. 66.) Defendants filed a reply on May 23, 2013. (Doc. 81.) On May 7, 2013, the Court ordered Defendants to file a controverting statement of facts in response to Plaintiff's separate statement of facts; Defendants filed their Controverting Statement of Facts on May 15, 2013.[3] (Docs. 76, 77.) Defendants seek summary judgment on Plaintiff's claims of national origin discrimination and retaliation. For the reasons stated herein, the Court will grant the Motion.[4]

---

[1] Defendants Mark Herrington, James Palmer and Drew John are sued only in their representative capacities. (Doc. 79, pg. 5.) Individual defendants cannot be held liable under Title VII. *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998).

[2] Both the motion and the response exceed the page limitations set forth in LRCiv 7.2.

[3] Briefing in this matter was delayed by a failed settlement conference.

[4] This case is suitable for decision without oral argument. *See* L.R. Civ. 7.2(f).

**FACTUAL / PROCEDURAL BACKGROUND**

Plaintiff is a former employee of Graham County's Eastern Arizona Regional Juvenile Detention Facility ("EARJDF"), a small facility which employees 13-16 staff and administrators. (DSOF 1, 6.)[5] Of those employees, at least five were Caucasian. (DSOF 9.) Plaintiff is also Caucasian and was born in the United States. (DSOF 2.) Plaintiff was hired by EARJDF in August, 2000. (DSOF 2.) In 2001, Plaintiff applied for a sergeant position; Fernando Castro, who is Hispanic, was selected for the position. (DSOF 24.) In 2003, Plaintiff was promoted to sergeant. (DSOF 3.) In 2005, Plaintiff was promoted to lieutenant. (DSOF 3.)

Plaintiff claims that Hispanic employees received more favorable treatment at EARJDF. According to Plaintiff, from the time he became a sergeant in 2005, whenever he dealt with disciplinary issues involving Hispanic employees, Assistant Administrator Michael Aranda, who is Hispanic, would interfere and try to lessen the charge or advise Plaintiff to disregard the problem. (DSOF 25.) In those situations, Assistant Administrator Aranda would also remind Plaintiff that Plaintiff was an at-will employee. (DSOF 25.) From August, 2005 until he left the County's employ, the County would not

---

[5] Defendants' Statement of Facts (Doc. 56) is abbreviated herein as "DSOF." Plaintiff's Controverting Statement of Facts (Doc. 67, pgs. 1-3) is abbreviated herein as "PSOF." Plaintiff's Additional Facts (Doc. 67, pgs. 3-20) is abbreviated herein as "PSSOF." Defendants' Controverting Statement of Facts (Doc. 77) is abbreviated herein as "DCSOF". The Court notes that PSOF does not comply with the Court's September 23, 2011 Scheduling Order, which advised the parties that pleadings appended with more than one exhibit shall be divided by tabbed dividers. (Doc. 10.) PSOF is accompanied by 473 un-tabbed, loose-leaf pages of exhibits. In addition, Plaintiff failed to comply with LRCiv 56.1, which provides that "a party opposing a motion for summary judgment shall file a statement that sets forth, for each paragraph of the moving party's statement, a separately numbered paragraph indicating whether the party disputes that statement *and a reference to the specific, admissible portion of the record supporting that party's position."* (emphasis added). LRCiv. 56.1 provides that "Each numbered paragraph of the statement of facts set forth in the moving party's separate statement of facts must, unless otherwise ordered, be deemed admitted for purposes of the motion for summary judgment if not specifically controverted by a correspondingly numbered paragraph in the opposing party's separate statement of facts." In addition, the Court's September 23, 2011 Scheduling Order specifically advised the parties that they were expected to comply with the Court's Local Rules and that the Court would not consider pleadings which did not conform to the Local Rules. Accordingly, the Court has considered all of Defendants' statements of fact undisputed for purposes of the Motion. *See* Rule 56(e)(2), Fed. R. Civ. P. The Court finds that the motion and supporting materials show that movant is entitled to summary judgment. *See* Rule 56(e)(3), Fed. R. Civ. P.

permit Plaintiff to take comp time for extra hours that he worked. (DSOF 26.) Due to staff shortages, it is not always possible for command personnel such as Plaintiff to take comp time. (DSOF 56.) Assistant Administrator Aranda was permitted to take comp time.[6] (DSOF 26.) When Sgt. Castro left employment with the County, he was paid for his unused comp time due to a clerical mistake. (DSOF 27; 59.) Plaintiff did not receive payment for his unused comp time when he resigned in September, 2010. (DSOF 27.) Plaintiff was permitted to take leave. (DSOF 55.)

In October, 2009, Plaintiff countermanded a schedule created by Sgt. Esgardo Luzania and Sgt. Robert Pruszynski because it did not assign detention officer Tandy Miller to the control room. (DSOF 32.) Also, in October, 2009, Sgt. Luzania, began spreading rumors that Plaintiff was having an affair with Miller. (DSOF 15.) Plaintiff complained to his supervisor, Assistant Administrator Aranda, but no action was taken. (DSOF 16.) On October 21, 2009, Plaintiff conveyed a report by Miller to Assistant Administrator Aranda and Administrator Gatwood which alleged misconduct by Sgt. Luzania. (DSOF 31.)

In January, 2010, Miller was assigned to work with Plaintiff preparing for the American Correctional Association (ACA) audit. (DSOF 10.) The audit was scheduled for August, 2010. (DSOF 11.) Also in January, 2010, Plaintiff ordered Sgts. Luzania and Pruszynski to change negative comments about Miller in her evaluation and advocated for Miller to receive a pay increase for her work on the ACA audit. (DSOF 33, 34.)

On May, 19, 2010, Plaintiff reprimanded Sgt. Luzania for insubordinate behavior after Sgt. Luzania questioned Plaintiff about bathroom inspection procedures during a meeting.[7] (DSOF 17; Doc. 77-1, pg. 6.)

---

[6] Administrator Gatwood, who is Caucasian, was also permitted to take comp time. (DSOF 29.)

[7] In his response, Plaintiff describes the May, 19, 2010 reprimand as stemming from Sgt. Luzania's allegedly sexist remark that Miller should be responsible for the facility's laundry. (Doc. 66, pg. 13.) However, the letter of reprimand dated May 19, 2010 does not mention the laundry incident, nor does the deposition testimony cited by Plaintiff in support of this claim.

- 3 -

On May 25, 2010, Plaintiff received a mark of "needs improvement" on his evaluation from Assistant Administrator Aranda.[8] (DSOF 18.) Assistant Administrator Aranda noted that Plaintiff "needs improvement on maintaining a professional respect for all subordinates." (DSOF 44.) The mark did not affect Plaintiff's pay or benefits. (DSOF 45.)

On May 26, 2010, Assistant Administrator Aranda informed Plaintiff that effective immediately, Aranda would be taking over Plaintiff's supervisory responsibilities in dealing with sergeants. (DSOF 19.) The decision to allocate supervisory responsibilities was made by Administrator Gatwood, who wanted Plaintiff to be able to focus on the ACA audit. (DSOF 47; Doc. 56-1, pg. 35.)

On May 29, 2010, Plaintiff submitted a formal complaint to Administrator Charles Gatwood regarding his compensation and the County's failure to allow him to take comp time, but no action was taken. (DSOF 18; 36; 58.) Plaintiff also submitted a complaint to Administrator Gatwood alleging that Plaintiff was being subjected to a hostile work environment in the form of rumors being spread about Plaintiff and Miller. (DSOF 36.)

In June or July, 2010, Plaintiff ordered that an inmate survey be conducted for the upcoming ACA audit. (DSOF 49.) When he received the completed surveys, Plaintiff noted some negative comments about himself.[9] (DSOF 50.)

On August 8, 2010, Plaintiff submitted a formal complaint to Graham County

---

(Doc. 77-1, pg. 6; Doc. 67, pg. 17.)

[8] Although the parties do not dispute that this evaluation occurred on May 25, 2010, the evaluation form included as an exhibit by both parties is dated January 28, 2010. (Doc. 67-2, pg. 45; Doc. 56-1, pg. 47.) Plaintiff claims that Administrator Gatwood falsely backdated the evaluation, but cites to an non-existent portion of the record in support of this claim. (PSSOF 81.) In addition, Plaintiff's repeated references to this mark as "unsatisfactory" are not supported by the exhibit, which indicates that a score of "1" signifies an "unsatisfactory" mark and a score of "2," which Plaintiff received, signifies "needs improvement." Finally, the actual language of the evaluation is not "needs improvement on maintaining a professional respect for all subordinates," it is "the manager reacts appropriately to authority, follows the chain of command and exhibits respect for both co-workers and the supervisor."

[9] Plaintiff claims that he questioned the inmates and they allegedly reported that Sgt. Luzania had encouraged them to write negative comments about Plaintiff in the survey. (DSOF 52; PSOF 52.) The Court has not considered this claim as fact because it is inadmissible hearsay.

- 4 -

Manager Terry Cooper alleging that he was being retaliated against for opposing discrimination against Miller. (DSOF 20; 39.) Cooper initiated an investigation, but found insufficient evidence to support the complaint and dismissed it. (DSOF 20.)

On September 1, 2010, Plaintiff complained that Miller had been told not to work the rest of the week. (DSOF 43.) Plaintiff was told not to return to work for the rest of the week because of all the hard work Plaintiff had put in to the ACA audit. (DSOF 44; 53.) His pay and benefits were not affected by the time off. (DSOF 54.)

On September 8, 2010, Plaintiff gave Administrator Gatwood a letter stating his intent to resign on September 23, 2010. (DSOF 13.) Plaintiff resigned from his employment with Graham County on September 23, 2010. (DSOF 5.)

On September 30, 2010, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination based on national origin (non-Hispanic) and retaliation. (DSOF 14.) Plaintiff alleged that he was subjected to a hostile work environment by Sgt. Luzania because of his national origin. Plaintiff further alleges that he was retaliated against for reporting Sgt. Luzania's harassment when he received a "needs improvement" mark on his evaluation and lost his supervisory responsibilities. (Doc. 56-1, pgs. 30-31.)

On June 6, 2011, Plaintiff filed his Complaint in the instant action, alleging claims against Defendants for national origin discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e, *et seq*.[10]

**STANDARD OF REVIEW**

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

//

---

[10] Defendants construed Plaintiff's Complaint as possibly stating a claim for constructive discharge, but Plaintiff's Response to Defendant's Motion for Summary Judgment clarifies that Plaintiff is not bringing a constructive discharge claim.

- 5 -

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.; see also* Fed. R. Civ. P. 56(c).

If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See also Anderson*, 477 U.S. at 256; *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). The nonmoving party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

**STATUTE OF LIMITATIONS / SCOPE OF REVIEW**

Under Title VII, a plaintiff seeking relief pursuant to the statute's provisions must file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1). If, however, the plaintiff first institutes proceedings with a state or local agency "with authority to grant or seek relief from such practice," the period of limitations for filing a charge with the EEOC is extended to 300 days. *Id.* Because the limitations period under Title VII operates as a statute of limitations, a claim of discrimination under the Act will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge. *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393–94 (1982).

Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the new claims are "like or reasonably related to the allegations contained in the EEOC charge." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1475-76 (9th Cir. 1989) (citation omitted). In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges. *Id*. (citation omitted).

## ANALYSIS

Defendants are entitled to summary judgment on Plaintiff's claims of national origin discrimination and retaliation. Plaintiff has failed to demonstrate a material issue of fact with respect to either claim. Plaintiff has failed to demonstrate a prima facie case of national origin discrimination and failed to demonstrate that Defendants' legitimate, non-discriminatory reasons for the allegedly retaliatory adverse employment actions were pretextual.

**I.   Defendants are entitled to summary judgment on Plaintiff's national origin discrimination claim.**

In order to establish a *prima facie* case national origin discrimination, Plaintiff must show that: (1) he belonged to a protected class, (2) he was qualified for the position, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his class were treated more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If Plaintiff satisfies the initial burden of establishing a *prima facie* case, the burden shifts to Defendants to prove they had a legitimate non-discriminatory reason for the adverse employment action. *Id.* If Defendant meets that burden, Plaintiff must prove that such a reason was merely a pretext for intentional discrimination.[11] *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In

---

[11] Plaintiff suggests that this Court should adopt a modified version of the *McDonnell Douglas* test and infer a *prima facie* case of discrimination upon a showing that background circumstances support the suspicion that the employer is discriminating against the majority and that the employer treated similarly-situated employees not belonging to the protected group differently. (Doc. 66, pg. 1.) The Ninth Circuit has not adopted that legal standard, and this

- 7 -

the present case, Plaintiff has failed to satisfy his burden of proof.

Plaintiff alleges four factual bases for his national origin claim: (1) in 2001, Plaintiff applied for a Sergeant position and an Hispanic, Fernando Castro, was selected instead; (2) from the time Plaintiff became a sergeant in 2005, whenever he dealt with disciplinary issues involving Hispanic employees, Plaintiff believed that Assistant Administrator Michael Aranda, who is Hispanic, would interfere and try to lessen the charge or advise Plaintiff to disregard the problem; (3) Administrator Aranda was permitted to take comp time, and Fernando Castro was paid for comp time, but Plaintiff was not permitted to take comp time or paid for it when he resigned; and (4) Plaintiff was essentially demoted in May, 2010 when he was stripped of his supervisory authority.[12] None of these allegations satisfies Plaintiff's burden of proof.

First, Plaintiff's claim that he was discriminated against in 2001 when Fernando Castro was hired as Sergeant is untimely, given that Plaintiff filed his EEOC Charge on September 30, 2010. *See Zipes* 455 U.S. at 393–94 (a claim of discrimination under the Act will not be sustained if it is based on an event or events that occurred more than 300 days before the filing of a charge). The Court rejects Plaintiff's claim that the 2001 failure to promote was part of a continuing practice of discrimination that Plaintiff did not discover until September 2010. Plaintiff did not mention the 2001 failure to promote in his EEOC Charge and has not presented any evidence to support his claim that he did not suspect a discriminatory motive until nine years later.[13]

Second, Plaintiff's allegation that Assistant Administrator Aranda interfered with

---

Court declines to do so. *See Hannon v. Chater*, 887 F.Supp. 1303 n.41 (N.D. Cal. 1995). Plaintiff's reliance on an incorrect legal standard renders much of his Response to Defendant's Motion for Summary Judgment unpersuasive.

[12] Plaintiff also makes several irrelevant allegations in support of his national origin discrimination claim, which the Court has not considered in granting the Motion for Summary Judgment. For example, Plaintiff discusses the demographics of Greenlee and Graham County and the firing of an employee named Bernice Brown. (Doc. 66, pgs. 5-6.) In addition, the Court notes that Plaintiff alleged a hostile work environment discrimination claim in his EEOC Charge but alleges a disparate treatment discrimination claim in the pending action.

[13] The Court notes that Administrator Gatwood, who is Caucasian, possessed the ultimate decision-making authority concerning the promotion of Fernando Castro. (DSOF 9, 57.)

- 8 -

Plaintiff's discipline of Hispanic subordinates is not an adverse employment action.[14] As a threshold matter, Plaintiff has failed to identify any specific incidents in which the Assistant Administrator effectively interfered with Plaintiff's discipline of Hispanic employees. The only evidence presented by Plaintiff in support of this claim is his testimony that Assistant Administrator Aranda would "step in and attempt to either lessen the charges of disciplinary action or tell me to disregard." (Doc. 56-1, pg. 8.) It is Plaintiff's opinion that Assistant Administrator Aranda only supervised him in this manner when Plaintiff was attempting to discipline Hispanic subordinates. "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of unlawful discrimination." *Chappell v. GTE Products Corp.*, 803 F.2d 261, 268 (6th Cir. 1986). Furthermore, Plaintiff does not cite to, and this Court is not aware of, any case law holding that undermining an employee's intent to reprimand subordinates amounts to an adverse employment action. Plaintiff's suspicion that Assistant Administrator Aranda was interfering with Plaintiff's attempts at discipline, or his perception of Assistant Administrator Aranda's management style, do not amount to interference with the terms and conditions of Plaintiff's employment. *See* 42 U.S.C. § 2000e–2(a)(1) (defining adverse employment action as one which affects the terms, conditions or privileges of employment); *see also Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (distinguishing the narrow definition of adverse employment action in Title VII discrimination cases from the broader construction relied on in retaliation cases). In addition, Plaintiff does not allege that similarly-situated Hispanics were not supervised in the same manner by Assistant Administrator Aranda.

Third, Defendants have articulated a legitimate, non-discriminatory reason for not permitting Plaintiff to take comp time and not paying Plaintiff for unused comp time

---

[14] The Court rejects Defendants' assertion that Plaintiff failed to present this claim in his EEOC Charge. The EEOC Charge alleges that Plaintiff reprimanded Sgt. Luzania, who is Hispanic, and then received an unsatisfactory mark on his evaluation from Assistant Administrator Gatwood. (Doc. 56-1, pg. 31.) Although Plaintiff does not allege those facts in support of his national origin discrimination claim in this case, his claim that Assistant Administrator Aranda unfairly supervised him is somewhat related to his EEOC claim that Assistant Administrator Aranda unfairly evaluated him.

- 9 -

when he resigned.[15] County policy requires that leave be taken within the period in which it was earned or no later than the following pay period. Plaintiff was often not permitted to take comp time because he was part of the command staff and EARJDF was required to maintain adequate staffing of command personnel. Due to severe budget restrictions, there were often staff shortages. Finally, Fernando Castro was paid comp time due to a clerical error when he left the County's employment. The County does not, as a rule, pay for unused comp time. Plaintiff has failed to demonstrate that any of these stated reasons are pretextual.

Fourth and finally, Defendants have stated a legitimate, non-discriminatory reason taking away Plaintiff's supervisory authority in May, 2010. Administrator Gatwood, who is Caucasian, testified that he made the decision to re-assign Plaintiff's supervisory responsibilities so that Plaintiff could focus on the ACA audit. Plaintiff did not lose any pay or benefits as a result of this action. Plaintiff has failed to demonstrate that this stated reason was pretextual.[16]

Because Plaintiff has failed to satisfy his burden of proof with respect to his national origin discrimination claim, Defendants are entitled to summary judgment as to this claim.

**II. Defendants are entitled to summary judgment on Plaintiff's retaliation claim**

To establish a prima facie case of retaliation under Title VII, the employee must allege and prove that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) there was a causal link between the protected activity and the employer's action. *See Payne v. Norwest Corp.*, 113 F.3d 1079,

---

[15] In addition, this claim is without merit because: (1) Plaintiff did dispute that he was at times given leave, which he used (DSOF 55; PSOF 55); (2) Plaintiff did not allege a claim related to comp time in his EEOC charge; (3) Administrator Gatwood is Caucasian and therefore his ability to take comp times undercuts Plaintiff's claim; and (4) Administrator Gatwood and Assistant Administrator Aranda were not similarly-situated to Plaintiff. *See Vasquez*, 349 F.3d 641 (employees in supervisory positions are generally deemed not to be similarly situated to lower level employees).

[16] In addition, the Court notes that Plaintiff does not appear to allege discrimination by Administrator Gatwood, but instead argues that Assistant Administrator Aranda deprived him of his supervisory duties. There is no evidence in the record to support this assertion.

- 10 -

1080 (9th Cir. 1997). Once the employee establishes a prima facie case, the burden shifts to the employer to present legitimate, non-discriminatory reasons for the adverse employment actions. Once the employer meets this burden, the plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext for retaliation. *See Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). Only then does the case proceed beyond summary judgment. *Id.*

Title VII's anti-retaliation provision does not make actionable retaliation against an employee that is not engaged in "protected activity" within the meaning of Title VII. *Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988) (The "opposed conduct must fairly fall within the protection of Title VII to sustain a claim of unlawful retaliation."); *Silver v. KCA, Inc*., 586 F.2d 138, 142 (9th Cir. 1978) ("[U]nder the clear language of the 'opposition' clause ..., a case of retaliation has not been made out unless the 'retaliation' relates to the employee's opposition to a [Title VII] violation."); *Shipley v. Hawaii, Dept. of Education*, 2007 WL 188029 (D. Haw. 2007).

Plaintiff alleges that he engaged in the following protected activity: (1) from October 2009 to January 2010, Plaintiff opposed gender discrimination against Miller by: relaying to Administrator Gatwood and Assistant Administrator Aranda that Sgt. Luzania was discriminating against Miller on the basis of her gender; taking over scheduling in order to ensure that Miller was fairly scheduled; and correcting an unfair evaluation of Miller; (2) in January, 2010, Plaintiff recommended adjusting the evaluation of Mona Lucero, a Hispanic, female-corrections officer, because he believed Lucero was highly-rated simply because she was Hispanic; (3) in January, 2010, Plaintiff recommended Miller for a pay increase and sometime thereafter told Gatwood that the failure to provide Miller with a pay increase was gender discrimination; (4) on May 29, 2010, Plaintiff submitted a complaint to Administrator Gatwood alleging that Plaintiff was being subjected to a hostile work environment in the form of rumors being spread about Plaintiff and Miller; (5) on September 1, 2010, Plaintiff objected when Miller was told not to return to work for the rest of the week; and (6) on August 8, 2010, Plaintiff submitted a formal complaint to Graham County Manager Terry Cooper alleging that he

was being retaliated against for opposing discrimination against Miller. (DSOF 20; 39.)[17]

There is no genuine issue of material fact supporting Plaintiff's claim that he believed that he was observing gender or national origin discrimination against Miller or that he raised concerns about gender or national origin discrimination. Neither Plaintiff nor Miller's testimony supports an inference that Plaintiff believed he was defending Miller against discrimination or engaging in other activity protected by Title VII between October, 2009 and January, 2010.[18] The evidence in the record demonstrates only that Plaintiff advocated for Miller between October, 2009 and January, 2010. Notably, Miller herself testified that she did not suspect gender discrimination until sometime after January, 2010. (Doc. 77-1, pg. 16.) Miller testified that in October, 2009, she felt mistreated by Sgt. Luzania but "had no idea where it was coming from," and "had no idea why he was treating [her] that way." (Doc. 77-1, pgs. 16 & 18.)

Similarly, the only evidence Plaintiff presents in support of his claim that he opposed gender discrimination when he recommended adjusting the evaluation of Mona Lucero is his affidavit testimony that he believed Lucero was highly-rated simply because she was Hispanic. There is nothing in the record to demonstrate that Plaintiff's

---

[17] Plaintiff also claims that he engaged in protected activity when he reprimanded Sgt. Luzania for an allegedly sexist remark regarding Miller taking responsibility for the facility laundry. As stated on page 3, footnote 7, there is no evidence to support that such a reprimand occurred. In addition, the comment made by Sgt. Luzania to Miller was arguably not a sexist comment: Miller was criticizing how the laundry was being done and Sgt. Luzania responded by stating that Miller should do the laundry herself. (Doc. 56-1, pg. 25.)

In addition, Plaintiff claims that he engaged in protected activity on July 26, 2010, when he expressed concern to County Administrator Terry Cooper about Miller's reassignment to the night shift and the rumors being spread about Plaintiff and Miller. (Doc. 66, pg. 16.) There is no evidence in the record demonstrating that Plaintiff made this statement. Defendants initially treated this as a statement of fact, based solely on citation to the Complaint (DSOF 37), but Plaintiff, as the party opposing the motion, may not rest upon allegations in his pleadings to defeat the motion. *Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst v. Louisiana Hydrolec*, 854 F.2d 1538, 1544 (9th Cir. 1988); *Frederick S. Wyle Professional Corp. v. Texaco, Inc*., 764 F.2d 604, 608 (9th Cir. 1985) (nonmoving party cannot rest on the hope of disproving the moving party's evidence at trial).

[18] No issue of material issue of fact is created by Miller's self-serving affidavit that contradicts the deposition testimony taken in this matter. As a general rule, an affidavit submitted in response to a motion for summary judgment which contradicts earlier sworn testimony without explanation of the difference does not create a genuine issue of material fact. *Kennedy v. Allied Mut. Ins. Co*., 952 F.2d 262, 266 (9th Cir. 1991).

- 12 -

suspicions were based on a reasonable good faith belief or that he conveyed those suspicions to his supervisors. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 271 (2001) (upholding summary judgment for employer where no reasonable person could have believed single incident violated Title VII); *Chappell,* 803 F.2d at 268 ("[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference" of unlawful discrimination). To the contrary, a plain reading of Plaintiff's affidavit suggests that Plaintiff recommended adjusting Mona Lucero's evaluation downward because she was Hispanic. This is not protected activity under Title VII. Plaintiff's claim that he engaged in protected activity on September 1, 2010 when he objected to Miller being told not to return to work also lacks support; nothing in the record indicates that Plaintiff stated or claimed that Miller was being discriminated against at that time. (PSSOF 96.) Accordingly, the only potentially protected activity articulated by Plaintiff are his claims that: (1) in January, 2010, he recommended Miller for a pay increase and sometime thereafter told Gatwood that the failure to provide Miller with a pay increase was gender discrimination, (2) on May 29, 2010, Plaintiff submitted a complaint to Administrator Gatwood alleging that Plaintiff was being subjected to a hostile work environment in the form of rumors being spread about Plaintiff and Miller; and (3) on August 8, 2010, Plaintiff submitted a formal complaint to Graham County Manager Terry Cooper alleging that he was being retaliated against for opposing discrimination against Miller.

The Ninth Circuit takes an expansive view of adverse employment actions in retaliation claims, defining an adverse employment action as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1242-43 (9th Cir. 2000) (quoting EEOC Compliance Manual Section 8, "Retaliation," ¶ 8008 (1998)). The EEOC test focuses on the deterrent effects of the action. *Id.* at 1243. Plaintiff alleges that he suffered the following adverse employment actions: (1) Plaintiff was subjected to false rumors about an inappropriate relationship with Miller; (2) on May 25, 2010, Plaintiff received a mark of "needs improvement" on his evaluation; (3) on

May 26, 2010, Plaintiff's supervisory responsibilities were re-assigned to Assistant Administrator Aranda; and (4) on September 1, 2010, Plaintiff was told not to return to work for the rest of the week. Starting rumors does not amount to an adverse employment action, *see E.E.O.C. v. Parra*, 2008 WL 2185124, n.6 (D. Or. 2008), nor does ostracism by co-workers. *See Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 869 (9th Cir. 1996). The other incidents described by Plaintiff arguably could be adverse employment actions. *See Ray*, 217 F.3d at 1243 (noting that the EEOC definition of adverse employment action includes lateral transfers, unfavorable job references, and changes in work schedules).

Even if Plaintiff could demonstrate a causal connection between his protected activity and the adverse employment actions he suffered, Defendants have articulated legitimate, non-discriminatory reasons for the allegedly adverse employment actions.[19] On May 25, 2010, Assistant Administrator Aranda noted that Plaintiff "needs improvement" in his relationships with supervisors and co-workers because Plaintiff's supervisors were attempting to encourage Plaintiff to improve his relationships with co-workers. (DSOF 44.) The mark did not affect Plaintiff's pay or benefits, and Plaintiff received the highest possible rating in the other 19 areas evaluated. Plaintiff's supervisory responsibilities were re-assigned to Assistant Administrator Aranda in order to provide Plaintiff with more time to work on the ACA audit. Plaintiff did not lose pay or benefits as a result of this decision. On September 1, 2010, Plaintiff was told not to return to work for the rest of the week because of all the hard work Plaintiff had put into

---

[19] The proximity of time between a protected activity and an adverse action may support an inference of causation. *Ray*, 217 F.3d at 1244; *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1065 (9th Cir. 2002). In the present case, Plaintiff received his evaluation and lost his supervisory responsibilities before he filed a formal complaint of discrimination against Miller or a formal complaint of retaliation. At best, Plaintiff would have to demonstrate that: (1) he suffered adverse employment actions in May and September, 2010 because sometime after January, 2010 he told Gatwood that he believed Miller was denied a pay raise due to gender discrimination, and/or (2) he was told not to return to work on September 1, 2010 because he had complained of gender discrimination in May and August, 2010.

- 14 -

the audit. Plaintiff did not lose pay or benefits as a result of this decision.[20] *See Jordan v. Clark*, 847 F.2d 1368, 1376-77 (9th Cir. 1988) (affirming summary judgment in favor of employer where employer delayed employee's promotion papers, increased her duties without amending her job description, denied her requests to attend management courses, undermined her position by taking away higher level duties, gave her several poor performance appraisals, put derogatory memos in her file, designed a means of reviewing later performance unfavorably, directed her work to other employees, and limited her to clerical work; the actions did not have an adverse impact, were not caused by protected activity and appeared to the court to be more a reaction to a problem of clashing personalities than acts in retaliation for the filing of a discrimination complaint). Plaintiff has failed to demonstrate that any of Defendants' stated reasons were pretextual.[21] Accordingly, Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

//
//
//
//
//
//

---

[20] Administrator Gatwood testified that Plaintiff's pay and benefits were not affected by the time off given to him in September, 2010. (DSOF 54.) Plaintiff claims that Administrator Gatwood required him to use annual leave, which affected his pay and benefits. (Doc. 66, pg. 17.) In support of this claim, Plaintiff cites to his own affidavit, which does not include any documentation demonstrating a reduction in annual leave. To defeat a motion for summary judgment, Plaintiff must come forward with evidence; he cannot rely solely on his own unsupported allegations.

[21] Plaintiff makes only two arguments related to pretext. He claims that an evaluation stating that he needs improvement in relationships with co-workers was disingenuous given that he was deprived of his supervisory responsibilities. (Doc. 66, pg. 15.) The Court rejects this argument because Plaintiff was not deprived of supervisory responsibilities until after the evaluation was complete, and regardless of his supervisory authority, he still had co-workers. He also claims that he did not consider being given the rest of the week off to be a reward. (Doc. 66, pg. 17.) He does not cite to any admissible portion of the record to support this assertion, and regardless, how Plaintiff perceived the time off does not alter how it was intended.

- 15 -

## CONCLUSION

For the foregoing reasons, IT IS ORDERED THAT Defendants' Motion for Summary Judgment filed on November 2, 2012 (Doc. 55) is GRANTED.

IT IS FURTHER ORDERED THAT the Clerk of the Court shall enter judgment in favor of Defendants and close the file in this matter.

Dated this 23rd day of September, 2013.

*Jennifer Zipps*
Jennifer G. Zipps
United States District Judge